IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **CINTYA CASTRO,** *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. CBD-18-2421 |
| **EARLY LEARNING LANGUAGE ACADEMIES, LLC,** *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

Plaintiffs Cintya Castro ("Castro"), Marcel Latorre ("Latorre"), and Yulisa Delgado ("Delgado") (collectively "Plaintiffs"), along with Defendants Early Language Academies d/b/a Whole Kids Academy ("WKA"), Cassandra Castro, Crystal Esler, and John Esler (collectively "Defendants") have submitted a motion to approve their settlement agreement ("Settlement Agreement"). Renewed Joint Motion for Approval of Settlement ("Renewed Joint Motion"), ECF No. 49. Previously, this Court denied without prejudice, the parties' Joint Motion to Approve Settlement ("Joint Motion") for failure to provide sufficient information which the Court could assess under the factors identified in *Saman v. LBDP, Inc.*, Civ. No. DKC-12-1083, 2013 WL 2949047 (D. Md. June 13, 2013). ECF No. 48.

The parties' Settlement Agreement (ECF No. 47–2) states that Defendants will pay a total sum of $90,000.00 to be divided as follows: (1) Plaintiff Castro would receive $21,600.00 in compensation for her claims; Plaintiff Latorre would receive $16,200.00 in compensation for her claims; Plaintiff Delgado would receive $16,200.00 in compensation for her claims; and, (2) Plaintiffs' counsel would receive $36,000.00 for attorney's fees and expenses.

1

The Court has reviewed the Renewed Joint Motion and related materials. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons that follow, the Court hereby **GRANTS** the parties' Renewed Joint Motion to the extent that it conforms with the amounts agreed to in the Settlement Agreement[1] as: (1) there exists a *bona fide* dispute; (2) the Settlement Agreement is both fair and reasonable under the *Saman* test; and, (3) the agreed to attorney's fees appear to be reasonable. A separate Order shall issue.

I.      Analysis

    A.  A *Bona Fide* Dispute Exists

Congress enacted the FLSA to protect workers from poor wages and long hours, which are often the result of power imbalances between workers and employers. *Saman v. LBDP, Inc.*, at \*2. Even when parties submit a joint motion seeking approval for a settlement agreement, the Court must undertake a multi-step review of the agreement and any attorney's fees requested to ensure its reasonableness. *Id.* "[A]s a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are 'actually in dispute.'" *Id.* at \*3 (citing *Lane v. Ko–Me, LLC*, Civ. A. No. DKC–10–2261, 2011 WL 3880427, at \*2 (D. Md. Aug. 31, 2011) (citation omitted)).

A *bona fide* dispute exists in this case. Defendants operate a preschool, WKA, in Montgomery County, Maryland. Pls.' Second Am. Compl. ¶ 2. Plaintiffs were employed by Defendants, as preschool teachers at WKA. *Id.* at ¶ 1. Plaintiffs allege that they worked beyond

---

[1] In the Renewed Joint Motion, Plaintiffs state that as of February 4, 2021, they incurred attorney's fees of over $40,000 with litigation costs of $165. Renewed J. Mot. 8–10. Plaintiffs assert the attorney's fees are "consistent with the rates set forth in Appendix B of the local rules." *Id.* However, for the purpose of settlement, Plaintiffs' counsel decided to forego any other claim for attorney's fees and accept the "separately-negotiated attorney's fee amount of $36,000.00 as full satisfaction of any claim for attorneys' fees and litigation costs." *Id.*

40 hours per week and were not properly compensated. *Id.* at ¶ 9-15.  Specifically, Plaintiff Castro alleged that for the last three years, she was scheduled to work 37.5-40 hours a week, but she worked approximately 44.5-50 hours a week. *Id.* at ¶ 9.  She contends that she did not receive any pay for working any additional hours, including the 2.5 hours that she worked between 37.5 and 40 hours.  *Id.*  Plaintiff Castro claims that she should have been paid her regular hourly rate for the extra 2.5 hours that she worked as well as the overtime rate of time-and-a-half for any additional hours she worked past 40 hours.  *Id.*  Plaintiff Latorre worked for Defendant from approximately August 2017 to June 2018.  *Id.* at ¶ 10.  She alleges that she worked approximately 49 hours per week, which was well beyond her scheduled 40 hours.  *Id.*  Plaintiff Latorre alleges that she was not paid for additional hours worked, and that she should have been paid at an overtime rate of time-and-a-half.  *Id.*  Plaintiff Delgado worked for Defendant from approximately December 2014 to July 2016.  *Id.* at ¶ 11.  She claims to have worked approximately 52.5 hours a week, well beyond her scheduled 40 hours.  *Id.*  Ms. Delgado alleges that she did not receive compensation for the additional hours worked which should have been paid at an overtime rate of time-and-a-half.  *Id.*  Plaintiff Delgado also contends that she is owed four weeks of vacation time.  *Id.* at ¶ 32.

      Plaintiffs claim that Defendants were aware of the additional hours that Plaintiffs worked, and that Defendants instructed Plaintiffs not to record the extra hours on their timesheets.  *Id.* at ¶ 12.  Plaintiffs contend that Defendants' failure to pay Plaintiffs' for their additional time worked, was "willful and intentional, and not in good faith."[2]  *Id.* at ¶ 14.  To support this contention, Plaintiffs point to two incidents.  In 2016, Plaintiff Delgado complained to Defendant Esler about

---

[2] Plaintiffs Castro and Delgado allege they were wrongfully terminated by Defendants for complaining about their unpaid overtime wages.  Pls.' Second Am. Compl. ¶ 35–40.  Plaintiff Delgado asserts she was pressured into resigning around June 2016, and Plaintiff Castro claims she was terminated on March 8, 2019.  *Id.* at 37.

not being paid overtime.[3]  *Id.* at ¶ 15.  Shortly after she complained, Plaintiff Delgado was forced to resign.  *Id.*  Additionally, in early 2018, Plaintiff Castro complained to Defendant Castro about not being paid for all her hours worked, including her overtime hours.  *Id.*  Shortly after, Plaintiff Castro was terminated from her position in March 2018.  *Id.*

In response to Plaintiffs' allegations, Defendants denied all liability.  Defs.' Answer, ECF No. 8.  Defendants raised several defenses, including arguing that Plaintiffs' claims for failure to pay wages and overtime pay are barred by the applicable statute of limitations.  Defs.' Answer 5.  Defendants also argue that: Plaintiffs' claims are barred for their failure to mitigate damages; that their damages were caused by their own conduct or failures; and that Defendants acted in good faith and in accordance with all applicable laws.  Defs.' Answer 4–5.  Defendants contend that Plaintiff Delgado was a substitute teacher who worked for intermittent periods, and therefore FLSA and applicable state laws were not applicable to her.  Renewed J. Mot. 5.  Defendants assert that Plaintiff Castro's termination was based on poor performance.  *Id.*  Globally speaking, "Defendants adamantly disput[e] Plaintiffs' entitlement to additional pay for hours worked and overtime, and maintain that their records, including timesheets and payroll records, show that Plaintiffs were paid correctly for all regular and overtime hours worked."  *Id.* at 4.  Defendants continue to deny any and all liability.  *Id.* at 2.  Accordingly, the Court is satisfied that a *bona fide* dispute concerning FLSA issues exists in this case.

---

[3] The Court notes that the Second Amended Complaint does not specify whether Plaintiff Delgado complained to Mr. or Mrs. Esler.

### B. The Settlement Agreement Passes the *Saman* Test

If a *bona fide* dispute exists, the next step is to assess the fairness and reasonableness of a settlement agreement using the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel ...; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)). Here, the Settlement Agreement appears to be fair and reasonable under the *Saman* factors.

#### 1. Extent of discovery

In their Renewed Joint Motion, the parties provide little information regarding this element. However, the record shows that the parties did engage in some form of discovery. The parties assert that "Defendants produced hundreds of documents to support [their] position," and Plaintiffs reviewed those documents.[4] Renewed J. Mot. 4. In their March 2019 Joint Status Report, the parties stated that they are "exchanging additional information and documents to further settlement negotiations." March 2019 J. Status Rep., ECF No. 19. While their Renewed Joint Motion does not specify what was exchanged during discovery, the Court is satisfied that sufficient discovery took place to determine the parties' position and to adequately negotiate a settlement.

---

[4] These documents refer to timesheets and payroll records, that Defendants allege show that Plaintiffs were paid correctly for all regular and overtime hours worked. Renewed J. Mot. 4.

### 2. Stage of the Proceedings

Although this matter was initiated over two years ago, this settlement still comes in the preliminary stages of the litigation. As stated previously, the parties were very close to a settlement after participating in mediation in March and May of 2019. Renewed J. Mot. 2. Specifically, the parties "came close to agreeing on a $75,000 global settlement to be paid in installments but could not come to an agreement on an appropriate timeframe." *Id.* On June 3, 2019, Defendants' counsel moved to withdraw as counsel. *Id.*; ECF No. 23. Consequently, Defendants were left without counsel for approximately a year and a half. Moreover, Defendants Early Learning Language Academies, LLC d/b/a Whole Kids Academy, Crystal Esler, and John Esler experienced financial difficulties and declared bankruptcy. Renewed J. Mot. 2. However, "[d]ue to additional financial complications caused by the COVID-19 pandemic, [D]efendants [subsequently] requested that all bankruptcy actions be dismissed." *Id.* The U.S. Bankruptcy Court for the District of Maryland accordingly dismissed the bankruptcy actions. *Id.*; *see* Renewed J. Mot., Exs. 1, 2. Defendants did not obtain new counsel until December 28, 2020. ECF No. 44. Shortly, after counsel for Defendants entered her appearance, a settlement was reached.

### 3. Absence of Fraud or Collusion

There is no evidence that the Settlement Agreement is the product of fraud or collusion. In their Renewed Joint Motion, the parties state that "[t]here is no claim or indication of fraud or collusion in the settlement." Renewed J. Mot. 7. "The parties stipulate that they are resolving this action in order to avoid the cost, time, emotional toll, and risks associated with continued litigation." *Id.* at 7. Lastly, the parties claim that they "freely and voluntarily agreed to the settlement and deemed it to be fair and reasonable." *Id.* at 9. "There is a presumption that no

fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." Saman, 2013 WL 2949047, at *5 (quoting Lamscolo, 2009 WL 3094955, at 12). The Court is satisfied that the Settlement Agreement is a result of the parties' arm's-length negotiations.

### 4. Experience of Counsel

Plaintiffs are represented by the law firm Zipin, Amster & Greenberg, LLC (the "Zipin Firm"). The managing partner and lead counsel for Plaintiffs is Philip Zipin. Plaintiffs contend that Mr. Zipin, has focused the majority of his career on employment law, and that he has "brought and resolved hundreds of wage and hour cases under the federal Fair Labor Standards Act and corresponding state statutes." *Id.* at 7. Mr. Zipin has been barred since 1982 and is "AV rated" by Martindale-Hubbell. Roy Lyford-Pike is another attorney at the Zipin Firm who represents Plaintiffs. *Id.* Mr. Lyford-Pike has been barred since December 2015 and practices employment law exclusively. Accordingly, the Court is satisfied that the Zipin Firm and the attorneys of record are sufficiently experienced in litigating matters concerning FLSA cases before this Court.

### 5. Opinions of Counsel

Counsel for all the parties believe this Settlement Agreement is in their clients' best interests. The Renewed Joint Motion states that "[t]he Parties determined that the likely expense and duration of this litigation militated in favor of early settlement." *Id.* Additionally, the parties claim that they:

> [R]ecognized continued litigation carried substantial increased risks, including the inability to definitively establish the hours Plaintiffs worked due to incomplete records, Defendants' valid arguments against liability on the merits, and Defendants' demonstrated financial difficulties leading them to the U.S. Bankruptcy Court, not to mention ever-mounting attorney's fees and litigation expenses on both sides. In addition to this, the Parties understood that the amount of any actual recovery, should the Plaintiffs be successful at trial, was uncertain. The Parties and their counsel, therefore,

7

agreed that the amount of the total settlement to Plaintiffs was fair and reasonable given the circumstances.

*Id.* at 6.

The parties contend that "[they] underst[and] that the amount of any actual recovery. . . [is] uncertain." *Id.* As a result, "[t]he parties and their counsel. . . agree that the amount of the total settlement to Plaintiffs [is] fair and reasonable given the circumstances." *Id.* Furthermore, the parties "are resolving this action in order to avoid the cost, time, emotional toll, and risks associated with continued litigation. . ." *Id.* at 7.

### 6. Probability of Plaintiff's Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

According to the Renewed Joint Motion, Plaintiff Castro estimates her damages for unpaid wages to be $16,790.50; Plaintiff Delgado estimates her damages for unpaid wages to be $15,408.38; and Plaintiff Latorre estimates her damages for unpaid wages to be $14,380.49. *Id.* at 4; *see* Ex. 3.[5] With this Settlement Agreement, Plaintiffs are receiving "the entirety of the alleged unpaid wages Plaintiffs claimed and . . . an additional greater amount to cover some measure of liquidated damages." *Id.* at 6. Plaintiff Castro will receive additional payment, to settle her wrongful termination claim. *Id.* Although, Plaintiff Castro requested $60,000 total to settler her claims, "[she] understood that the amount of any actual recovery . . . was uncertain." *Id.* Defendants also "steadfastly refute Plaintiff Castro's allegations that her termination was retaliatory and instead insist it was based on documented poor performance." *Id.* at 5.

The Renewed Joint Motion discusses some difficulties Plaintiffs face in order to prevail on the merits, "including the ability to definitively establish the hours Plaintiffs worked due to incomplete records." *Id.* at 6. Defendants dispute Plaintiffs' entitlement to any extra pay and

---

[5] The estimated damages by Plaintiffs do not include liquidated damages or any non-wage damages. Renewed J. Mot. 4.

8

maintain that they paid Plaintiffs for "all regular and overtime hours worked." *Id.* at 4. Defendants also assert financial difficulties and claim that they do not have the financial means to pay Plaintiffs what they would seek at trial. *Id.* at 5. Given the difficulties in this case, the Settlement Agreement ensures Plaintiffs receive at least all their alleged unpaid wages. The parties also assert that this settlement is a "reasonable compromise of disputed issues." *Id.* at 9.

### C. Attorney's Fees

The final step in this inquiry is an independent assessment of the reasonableness of any attorney's fees that may be included in a settlement agreement. *Saman*, 2013 WL 2949047, at *3 (quoting *Lane,* 2011 WL 3880427, at *3). In the course of this independent assessment, the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at *6–7 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). When a claim for attorney's fees is filed in the federal court in Maryland, there is an extra layer of complexity arising from the Court's Local Rules which includes an entire appendix listing "Rules and Guidelines" for how the parties are to request reimbursement of fees. Local Rules, App. B (D. Md. Dec. 1, 2018).

Here, Plaintiffs' counsel assert they incurred attorney's fees of $40,459.95 and expenses of $165.00. Renewed J. Mot. 6; *see* Exs. 4, 5. However, "[t]he parties have agreed to pay Plaintiffs $36,000 in reasonable attorney's fees and costs," and "Plaintiffs do not seek any

9

additional fees beyond that amount." *Id.* While the Joint Motion does not explicitly address each of the *Saman* factors, it does provide information concerning some. Certain factors were more significant to the determination of reasonableness in this case and are therefore addressed in detail *infra*. The remaining factors present no novel issues or significant impact on the reasonableness of the attorney's fees requested. [6]

### 1. The Time and Labor Expended

The amount of "time and labor expended" by counsel on a particular case is an essential starting point for assessing the reasonableness of the total amount of fees requested. Accordingly, detailed information concerning the tasks performed and billed for by counsel is necessary for the Court to make an accurate assessment. *See United Food & Commercial Workers Unions v. Magruder Holdings, Inc.*, No. GJH-16-2903, 2017 WL 3129192, at *4 (D. Md. July 21, 2017) (noting the movant attached "a summary of the legal services performed in the matter, broken down into date, attorney, narrative of the task, hours expended, and fees charged").

Attached to the Renewed Joint Motion, Mr. Zipin expended 55.7 hours on this litigation and Mr. Lyford-Pike, expended 47.7 hours. Renewed J. Mot. 7. Plaintiffs also provided a detailed work log summarizing the legal services rendered. Renewed J. Mot, Ex. 4. This work

---

[6] The remaining *Saman* factors are:

> (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; . . . (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; . . . (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client . . . .

*Saman*, 2013 WL 2949047, at *6–7 (citing *Barber*, 577 F.2d at 226 n.28).

log is broken down by date and includes information on the individual who billed for the services, a description of the work conducted, the total hours spent on the particular task, the rate at which a particular task was billed, and a calculation of the fees charged.  The Court notes that this work log was not organized by litigation phase, as required by the Local Rules.  *See* Local Rules, App. B(1)(b) ("Fee applications, accompanied by time records, shall be submitted . . . organized by litigation phase."); *see also United Food & Commercial Workers Unions*, 2017 WL 3129192 at *4.  However, in light of the fact that this is an unopposed motion for settlement, both parties were represented by counsel, and the parties were able to reach an agreement in the early stages of the litigation, the Court is willing to accept the supplemental filing in its current format.  Plaintiffs' counsel should ensure any future submissions for attorneys' fees are properly supported with information that is sufficiently detailed and formatted in compliance with the Local Rules or risk their request being denied.  *See, e.g.*, *United Food & Commercial Workers Unions*, 2017 WL 3129192, *4 (directing a plaintiff re-submit its request for attorney's fees in an "organizational format consistent with [the Local Rules]").

### 2. The Novelty and Difficulty of the Questions Raised

Based on the allegations raised in the Complaint, this case would have been a time consuming one to litigate considering the fact Plaintiffs had to prove how many regular hours they worked without compensation, as well as how many overtime hours they worked without pay at time-and-a-half.  Each individual Plaintiff alleged different regular time and overtime wages that they were entitled to.  This would have been difficult to prove because Plaintiffs indicated they did not record any additional hours on their timesheets.  Pls.' Second Am. Compl. ¶ 12.  Defendants argue that Plaintiff Delgado was a substitute teacher who was not entitled to protection under FLSA.  Renewed J. Mot. 5.  Lastly, while Plaintiff Castro alleged a wrongful

termination claim, Defendants contend that Plaintiff Castro was terminated because of poor performance. *Id.* at 4. These difficulties raise the question if Plaintiffs would have recovered the damages they alleged.

### 3.   (5) The Customary Fee for Like Work

An additional factor considered by the Court is the customary fee attorneys charge for the type of work the attorney seeks to be reimbursed. For the convenience of counsel, the Local Rules include guidelines listing a presumptive range of reasonable hourly rates. *Gonzales v. Caron*, Civ. A. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Plaintiffs' counsel alleges that the hourly attorney's fees that they incurred is over $40,000.[7] Renewed J. Mot. 6. Further, they allege that the fees are "consistent with the rates set forth in Appendix B of the local rules." *Id.* at 8. Mr. Zipin has been barred since 1982. *Id.* at 7. Therefore, Mr. Zipin is entitled to the highest hourly rate ranging from $300-$475, for attorneys barred for twenty years or more. *See* Local Rules, App. B(3)(e). Mr. Lyford-Pike has been barred since 2015. Renewed J. Mot. 7. He may recover rates for attorneys barred five to eight years – which is an hourly rate ranging from $165-$300. *See* Local Rules, App. B(3)(b). The Zipin Firm, submitted a detailed log that shows how many hours Plaintiffs' counsel worked on this case. *See* Renewed J. Mot, Ex. 4. Plaintiffs are requesting that the Court approve an hourly rate of $475 for Mr. Zipin and $260 for Mr. Lyford-Pike. Renewed J. Mot. 7. The rates that Plaintiffs are requesting are within the guidelines. Therefore, the Court finds these rates to be reasonable.

---

[7] The Court notes that Mr. Zipin billed $26,457, and Mr. Lyford-Pike billed $12,402 for a total of $38,859.50. However, other employees of the Zipin firm also worked on this case and billed accordingly. *See* Renewed J. Mot, Exs. 4, 5. The Court finds that Plaintiffs' counsel incurred over $40,000 as Plaintiffs allege. Exhibit 4 shows the Zipin firm incurred a total of $40,459.95 for hourly fees and $165 for expenses. *See* Renewed J. Mot, Exs. 4, 5.

### 4. (9) The Experience, Reputation and Ability of the Attorney

As detailed above, Plaintiffs' counsel asserts their firm has significant familiarity with wage and hour claims. *See supra* Section I.B(4). Of note is the fact that the lead attorney, Mr. Zipin, has "brought and resolved hundreds of wage and hour cases under the federal Fair Labor Standards Act and corresponding state statutes." Renewed J. Mot. 7.

### 5. (12) Attorneys' Fees Awards in Similar Cases

Plaintiffs' counsel's request for $36,000 in reasonable attorney's fees, is approximately sixty-six percent (66%) of the total damages Plaintiffs will be collectively receiving. Counsel has not provided any examples of attorneys' fees awards in similar cases, but a review of a few cases from this district reveal this is a reasonable amount to recover considering the number of Plaintiffs, the complexity of the issues at hand and the procedural posture of the matter. *See, e.g.*, *Navarro v. Eternal Trendz Customs, LLC*, Civ. A. No. TDC-14-2876, 2015 WL 898196 (D. Md. Mar. 2, 2015) (approving a settlement which included attorneys' fees and costs amounting to $3,545.20 where plaintiffs were awarded $4,291.49 and $1,298.89 in wages and liquidated damages); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404 (D. Md. 2014) (Grimm, J.) (approving a settlement that was agreed to after informal discovery and alternative dispute resolution, and that included $3,000 in attorneys' fees and costs where plaintiff was awarded $4,500 in wages and liquidated damages); *Almendarez v. J.T.T. Enterprises Corp.*, Civ. No. JKS-06-68, 2010 WL 3385362 (D. Md. Aug. 25, 2010) (granting attorneys' fees 25 times the total amount eight plaintiffs recovered after trial). Accordingly, the Court finds the ratio between what Plaintiffs will recover and what Plaintiffs' counsel will be reimbursed is in line with other similar cases.

## II. Conclusion

Based on the foregoing, the Court hereby **GRANTS** the parties' Joint Motion to the extent that it conforms with the amounts agreed to in the Settlement Agreement as: (1) there exists a *bona fide* dispute; (2) the Settlement Agreement is both fair and reasonable under the *Saman* test; and, (3) the attorneys' fees agreed to are reasonable under *Saman*.


March 9, 2021                                                                      /s/

                                                                        Charles B. Day
                                                                        United States Magistrate Judge


CBD/pjkm